***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Homick and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties and their representatives. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Homick.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act, and the North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter. *Page 2 
2. An employee-employer relationship existed between plaintiff and defendant at all times in questions.
3. Defendant is self-insured. The Third-Party Administrator is The PMA Group.
4. Plaintiff's average weekly wage as of December 10, 2003 is $489.20, which results in a compensation rate of $326.15.
5. The parties attended a mediated settlement conference.
6. Plaintiff suffered an injury to his back on December 10, 2003, which defendants contend was medical only. Defendants have denied ongoing treatment to plaintiff's back and the payment of temporary total disability benefits.
7. The parties stipulated to the admissibility of the following documents, which were received into evidence:
 • Exhibit 1: Pre-Trial Agreement, Industrial Commission Forms, Discovery Responses, Plaintiff's Medical Records, Correspondence, Social Security Disability Documents and Medical Bills (paginated from 1-749); and
 • Page 247A, an August 27 2009 medical record from Dr. Scott E. Reeg, was received post-hearing and added to Stipulated Exhibit 1.
8. The issue for determination is as follows:
 • To what compensation and medical benefits is plaintiff entitled to receive as a result of his injury on December 10, 2003?
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT *Page 3 
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 51 years old. Plaintiff completed the eleventh grade of high school.
2. Plaintiff has worked for defendant for over 17 years as a laborer, commencing in work in 1990. His job duties included planting flowers and shrubbery, digging with a shovel, mowing grass, pouring asphalt, spraying for weeds and insects and other unskilled to limited skilled manual labor duties. A job description of the laborer position, which was received into evidence, described the position as follows: "heavy work requiring the exertion of 100 pounds of force occasionally, up to 50 pounds of force frequently, and up to 20 pounds of force constantly to move objects; work requires climbing, stooping, kneeling, crouching and crawling.
3. On December 10, 2003, plaintiff sustained an admittedly compensable injury to his back when he was attempting to load a heavy garden tiller on the back of a truck. As he testified, plaintiff experienced a burning pain and pull in his back. Plaintiff reported the incident to his supervisor, Kevin Heifferon, and on December 11, 2003, was referred to Med Center 1. Plaintiff was treated for lower back pain and released from work for approximately one week. Plaintiff was also referred for physical therapy.
4. On December 16, 2003, plaintiff returned to work with light duty restrictions. On February 25, 2004, an MRI was performed that revealed a small left paracentral and foraminal disc herniation at L5-S1 with posterior displacement of the S1 nerve root along with bilateral foraminal narrowing, greater on the left side.
5. As plaintiff continued to experience back pain, on March 3, 2004, Dr. Teresa Smith of Med Center 1 referred plaintiff to Dr. Keith Tucci, a neurologist with Eastern Neurosurgical and Spine Associates. On April 1, 2004, plaintiff presented to Dr. Tucci with complaints of back and left leg pain. Plaintiff reported injuring himself at work about five *Page 4 
months ago when he lifted a tiller onto a truck and since that time has been experiencing pain in his back and leg. Plaintiff told Dr. Tucci that his pain is usually between a seven and an eight out of ten but can be as high as a ten out of ten. Plaintiff explained that his pain interfered with the performance of his work and daily activities.
6. Dr. Tucci diagnosed plaintiff with a small but strategically placed disc rupture at L5-S1, which was deviating the left S1 nerve root in the spinal canal. As a result, Dr. Tucci recommended surgery to repair the ruptured disc. Plaintiff, however, was reluctant to consider surgery and, as a consequence, Dr. Tucci referred plaintiff to physical therapy and subsequently for epidural spine steroid injections.
7. As plaintiff continued to experience back and left leg pain, on February 22, 2005, defendant referred plaintiff to Dr. Scot E. Reeg, an orthopedic surgeon for a second opinion. Dr. Reeg opined that plaintiff's lower back pain very likely was coming from a disc injury in the lower part of the spine. Dr. Reeg opined that it was unlikely plaintiff's back condition would resolve itself in the near future to allow plaintiff to return to his regular work. Therefore, Dr. Reeg maintained light duty restrictions of no lifting of over five pounds and assigned a four percent permanent partial disability rating to the lumbar spine, due to plaintiff's 2003 work injury.
8. On July 18, 2005, plaintiff again presented to Dr. Tucci with continued complaints of back and lower extremity pain, which interfered with his ability to work and perform daily living activities. As plaintiff continued to resist surgery, Dr. Tucci referred plaintiff back to his primary care physician but would treat plaintiff if he elected to proceed with neurosurgical intervention. *Page 5 
9. Plaintiff continued to work for defendant in a light duty capacity of no lifting more than five pounds, which consisted primarily of picking up litter with a stick.
10. On August 11, 2005, Dr. Reeg noted plaintiff had a dysfunctional disc at the L5-S1. Dr. Reeg opined that plaintiff's condition remained unchanged in that plaintiff continued to experience significant pain over the lumbosacral junction into his hips and hamstring areas. Dr. Reeg maintained the modified work duties for plaintiff.
11. As a result of an August 2005 Functional Capacity Examination (FCE), Dr. Reeg assigned permanent medium level work restrictions to plaintiff on September 1, 2005. Despite his back pain, plaintiff continued to work in a modified status with defendant as best as he could.
12. In a July 28, 2006 memorandum, defendant informed plaintiff, "Because you feel that you cannot perform the task of removing weeds, a task well within the prescribed restrictions by both Dr. Tucci and Dr. Reeg, we feel it is in your best interest and consistent with our efforts to accommodate your claims, to be placed out of work at this time." Defendant noted that the work assigned was "light duty" work and Dr. Reeg had released plaintiff to medium duty. Defendant directed plaintiff to report to his supervisor, Kevin Heifferon, on a weekly basis to discuss any changes in plaintiff's work status.
13. Plaintiff remained out of work from August 2006 until approximately early December 2006. Defendants did not pay plaintiff any indemnity benefits during this time period and filed a Form 61 dated August 1, 2006, alleging plaintiff refused suitable employment on July 28, 2006.
14. On August 29, 2006, defendant referred plaintiff to Dr. William Lestini, an orthopedic surgeon. Plaintiff reported that he had injured his back lifting the tiller at work. Plaintiff reported that his back pain had increased in severity and that it was located on both *Page 6 
sides of the lumbar spine and traveled down the lateral thighs into the posterior calf muscles. Plaintiff reported constant pain that was aggravated by standing, walking, driving and bending forward.
15. Dr. Lestini opined that the only way to definitively determine the source of plaintiff's symptoms was to perform discography.
16. Dr. Lestini opined that at this point, if plaintiff did not want to pursue surgical options, he could settle his workers' compensation claim, return to regular duties despite his pain or return to work with medium restrictions as established by the FCE.
17. Plaintiff underwent the discogram and returned to Dr. Lestini on October 26, 2006. The discogram revealed some changes at L5-S1, slight internal annular tearing and some early internal derangement at L4-5. At this point, Dr. Lestini did not believe plaintiff was a good surgical candidate; therefore, he advised plaintiff to continue conservative treatment, physical therapy and a home-based exercise program. Dr. Lestini concluded that plaintiff had reached maximum medical improvement and released him to full duty work with no restrictions and no impairment rating.
18. The undersigned find that plaintiff was restricted to medium level work by Dr. Reeg on September 1, 2005, and attempted to continue working in the laborer position as modified by defendant for as long as he could. However, by July 28, 2006, plaintiff's pain had increased to the extent that he was having difficulty performing even the modified work. As defendant was no longer able to accommodate plaintiff's restrictions as of July 28, 2006, defendant removed plaintiff from work. *Page 7 
19. The undersigned find that as a result of plaintiff's December 10, 2003 work injury, he was unable to earn any wages in his former position with defendant or in any other employment as of July 28, 2006, until he returned to work with defendant in December 2006.
20. In December 2006, plaintiff returned to work for defendant. Plaintiff testified that he experienced a further aggravation of his back pain when pulling some leaves and dirt on a sheet while working for defendant. Plaintiff continued to work for defendant until March 28, 2007, when plaintiff claims to have further aggravated his lower back condition while carrying a backpack blower at work. Plaintiff testified that he continued to work that day, but the pain worsened and he reported his condition to his supervisor. Plaintiff testified that his supervisor instructed him to see his personal doctor, Dr. Quentin Mewborn at Greenville Family Doctors.
21. The undersigned find that although plaintiff did aggravate his back condition on several occasions, these incidents were not material aggravations but constituted temporary flare-ups of plaintiff's back condition and were related to his December 10, 2003 work injury.
22. Plaintiff presented to Dr. Mewborn, who assigned light duty work restrictions. Dr. Mewborn referred plaintiff for an MRI and then to Dr. Reeg, the orthopedic surgeon. As a result of his continuing back pain, as of March 28, 2007, plaintiff took a leave of absence from his work with defendant. At the hearing, plaintiff testified that he worked as long as he could bear the pain but at this point, was no longer able to do so.
23. As of April 13, 2007, plaintiff exhausted his available leave and continued on a leave without pay status with defendant.
24. An MRI, which was performed on April 11, 2007, revealed evidence of degenerative changes at L4-5 and L5-S1 with a small left L5-S1 disc protrusion and small central L4-5 disc bulge. *Page 8 
25. On May 10, 2007, William S. Payne, Dr. Reeg's certified physician's assistant, diagnosed plaintiff with lumbar degenerative disc disease, a small left L5-S1 disc protrusion and an L3-L4 disc bulge. Mr. Payne continued light duty work restrictions for plaintiff.
26. In a May 25, 2007 memorandum from T. N. Tysinger, Jr., Director of Public Works for defendant, defendant informed plaintiff that there was no light duty work available as prescribed by plaintiff's personal physician and William Payne, physician's assistant to Dr. Reeg. Mr. Tysinger stated that Dr. Lestini had released plaintiff to return to work without any restrictions as had two other doctors, whom he did not name. Based on the opinions of these doctors, Mr. Tysinger questioned the validity of plaintiff's ongoing back problems. Mr. Tysinger informed plaintiff that if he did not return to full duty work as recommended by Dr. Lestini by Friday, June 8, 2007, or qualify for Family Medical Leave, plaintiff would be placed on unauthorized leave. If plaintiff did not return to full duty work within three days of being placed on unauthorized leave, he would be considered to have voluntarily resigned his position with defendant.
27. On June 6, 2007, plaintiff's counsel responded to the May 25, 2007 memorandum by requesting that defendant take no adverse action against plaintiff due to his inability to work and that defendant provide the names of the other two physicians who had released plaintiff to return to full duty work. Defendant neither responded to plaintiff's June 6, 2007 request nor provided the names of the other two doctors who had released plaintiff to return to work without restrictions.
28. In a letter dated June 15, 2007, Mr. Tysinger informed plaintiff that his employment with defendant was terminated on June 13, 2007. *Page 9 
29. After his termination, plaintiff continued to present to Dr. Reeg with complaints of lower back pain to the left of the midline at the L5-L1 level with some radiculitis and intermittent leg pain. On August 9, 2007, Dr. Reeg prescribed epidural steroid injections, which were administered at Pitt County Memorial Hospital.
30. As a result of a discogram performed on September 11, 2008, Dr. Reeg recommended two-level fusion surgery, which he performed on February 25, 2009 at Pitt County Memorial Hospital. Dr. Reeg opined that plaintiff's surgery was overall successful. At the time of the hearing, Dr. Reeg had not yet released plaintiff to return to work.
31. Dr. Reeg opined, and the undersigned find, that plaintiff's injury on December 10, 2003 was an acute exacerbation of plaintiff's pre-existing degenerative disc disease and that the treatment and care plaintiff received, including the fusion surgery, was reasonably required to effect a cure, provide relief and lessen plaintiff's period of disability from his symptoms due to the 2003 work accident.
32. Dr. Lestini opined that plaintiff's work injury on December 10, 2003, when he lifted the tiller, was not an unusual mechanism to cause the symptoms that plaintiff was experiencing. Dr. Lestini also opined that the second discogram performed in September 2008 was reasonable as it had been two years since the last one and that plaintiff's two-level fusion surgery performed by Dr. Reeg was also reasonable, based on the results of the discogram.
33. With respect to plaintiff's treatment and prognosis after he last presented to Dr. Lestini in February 2007, Dr. Lestini deferred to the opinions of Dr. Reeg, who was more familiar with plaintiff's condition since he had performed the surgery. However, Dr. Lestini did opine that he would not recommend that plaintiff return to his former position of laborer, which required heavy manual labor and lifting up to 100 pounds. *Page 10 
34. The undersigned give greater weight to the testimony of Dr. Reeg than Dr. Lestini as Dr. Reeg was more familiar with plaintiff's back condition and performed plaintiff's fusion surgery.
35. Based on the greater weight of the medical evidence of record, the undersigned find that plaintiff's symptoms of lower back pain with radiculopathy are related to his compensable injury on December 10, 2003, and that plaintiff's work injury significantly exacerbated plaintiff's pre-existing degenerative disc disease, as Dr. Reeg opined.
36. The Full Commission finds that the medical treatment plaintiff received for his lower back and radicular pain, including the surgery performed by Dr. Reeg, was reasonably required to effect a cure, give relief and lessen plaintiff's period of disability.
37. At his deposition on October 6, 2009, Dr. Reeg opined that plaintiff was not at maximum medical improvement but anticipated that he might be in six to eight months post-surgery. At that point, Dr. Reeg opined that he may consider another FCE to determine plaintiff's work restrictions rather than returning him to work with medium-level work requirements.
38. Although plaintiff was not yet at maximum medical improvement, Dr. Reeg opined that plaintiff would retain a permanent partial impairment of approximately thirty to thirty-five percent.
39. Based upon the greater weight of the medical evidence of record, and as a result of plaintiff's admittedly compensable injury by accident of December 10, 2003 and his continuing back symptoms, plaintiff has been unable to earn any wages in his former position with defendant or in any other employment from July 28, 2006, until he returned to work with defendant in December 2006, and from March 28, 2007 and continuing. *Page 11 
40. Based upon the medical evidence of record, there is a substantial risk of the necessity of future medical compensation for plaintiff's continuing back symptoms.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On December 10, 2003, plaintiff sustained an admittedly compensable injury by accident to his lower back in the form of a specific traumatic incident arising out of and in the course of his employment with defendant. As the direct and natural result of and causally related to his December 10, 2003 injuries by accident, plaintiff sustained a material exacerbation of his pre-existing, non-disabling degenerative back condition. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of plaintiff's December 10, 2003 compensable injury by accident, plaintiff was unable to earn the same wages he was earning at the time of his injury in the same or in any other employment from July 28, 2006, when defendant removed plaintiff from work until plaintiff returned to work with defendant in December 2006, and from March 28, 2007 and continuing. Accordingly, plaintiff is entitled to temporary total disability compensation at a rate of $326.15 per week from July 28, 2006, when defendant removed plaintiff from work until plaintiff returned to work with defendant in December 2006, and from March 28, 2007, and continuing until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to all medical expenses incurred or to be incurred as a result of his compensable injury, including the fusion surgery with Dr. Reeg, for so long as such *Page 12 
examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
4. There is a substantial risk that plaintiff will need future medical treatment for his back condition. N.C. Gen. Stat. § 97-25.1.
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law the Full Commission makes the following:
 AWARD
1. Subject to the attorney's fee approved below, defendant shall pay plaintiff temporary total disability compensation at a rate of $326.15 per week from July 28, 2006, when defendant removed plaintiff from work until plaintiff returned to work with defendant in December 2006, and from March 28, 2007, and continuing until further Order of the Industrial Commission. Compensation that has accrued shall be paid in a lump sum, also subject to the attorney's fee.
2. Defendant shall pay all related medical expenses incurred or to be incurred by plaintiff pursuant as the result of his injury by accident, including the fusion surgery performed by Dr. Reeg, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due plaintiff under Paragraph One of this Award is approved for plaintiff's counsel and shall be paid by defendant as follows: twenty-five percent of any compensation which has accrued shall be paid directly to plaintiff's counsel. Thereafter, every fourth compensation check shall be paid directly to plaintiff's counsel. *Page 13 
4. Defendant shall pay the costs.
This the 20th day of August 2010.
 S/__________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/__________ CHRISTOPHER SCOTT COMMISSIONER
 S/__________ BERNADINE S. BALLANCE COMMISSIONER *Page 1